<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DOBCO INC.,<br><br>                Plaintiff,<br><br>     v.<br><br>THE UNION COUNTY IMPROVEMENT AUTHORITY, THE COUNTY OF UNION, DIGROUP ARCHITECTURE, LLC, MAST CONSTRUCTION SERVICES, INC., BIBI TAYLOR, EDWARD T. OATMAN, VINCENT MYERS, AND TED DOMURACKI,<br><br>            Defendant. | Case No. 2:25-cv-754 (BRM) (JBC)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are Defendants MAST Construction Services, Inc. ("MAST")  and Ted Domuracki's (collectively, "MAST Defendants") (ECF No. 44); the Union County Improvement Authority (the "UCIA") and Bibi Taylor's (collectively, "UCIA Defendants") (ECF No. 46); Di Group Architecture ("Di Group") and Vincent Myers's (collectively "Di Group Defendants") (ECF No. 48); and the County of Union ("Union County") and Edward T. Oatman's (collectively "Union County Defendants") (ECF No. 50) Motions to Dismiss Plaintiff Dobco, Inc.'s ("Dobco") Complaint (ECF No. 1) pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1), Rule 12(b)(6), and the doctrine of *forum non conveniens*.[1] Alternatively, Union County Defendants

---

[1] Both the UCIA and Union County move to dismiss the Complaint pursuant to a forum selection clause under Rule 12(b)(1) and/or 12(b)(6). (*See* ECF No. 46 at 24–25; ECF No. 50 at 17–18.) Although the Third Circuit has held the appropriate mechanism to enforce a forum selection clause is a motion to dismiss pursuant to the doctrine of *forum non conveniens*, *Collins v. Mary Kay, Inc.*,

move to stay the action pending mediation. (ECF No. 50 at 13–17.) Dobco filed an omnibus Opposition (ECF No. 52); and MAST Defendants, UCIA Defendants, Di Group Defendants, and Union County Defendants (collectively, "Defendants") filed replies (ECF Nos. 45, 47, 49, 51). This Court has jurisdiction pursuant to 42 U.S.C. § 1331. Having reviewed and considered the parties' submissions filed in connection with the motions and having declined to hold oral argument in accordance with Rule 78(b), for the reasons set forth below and for good cause shown, Defendants' respective Motions to Dismiss pursuant to Rule 12(b)(1) are **DENIED**; UCIA Defendants and Union County Defendants' respective Motions to Dismiss pursuant to the doctrine of *forum non conveniens* are **GRANTED**; Defendants' respective Motions to Dismiss pursuant to Rule 12(b)(6) are **DENIED AS MOOT**; Union County Defendants' Motion to Stay the Action is **DENIED AS MOOT**; and Dobco's Complaint is **DISMISSED WITHOUT PREJUDICE** to be refiled in the Superior Court of New Jersey consistent with this Opinion.

---

874 F.3d 176, 180 (3d Cir. 2017); *Hoboken Yacht Club LLC v. Marinetek N. Am. Inc.*, Civ. A. No. 19-12199, 2019 WL 7207486, at *2 n.3 (D.N.J. Dec. 26, 2019), the courts have recognized a forum selection clause may be enforced via a motion to dismiss under Rule 12(b)(6), *Reliable Paper Recycling, Inc. v. Helvetia Glob. Sols., Ltd.*, Civ. A. No. 23- 22124, 2024 WL 1461346, at *1 (D.N.J. Apr. 4, 2024) (citing *Salovaara v. Jackson Nat. Life Ins. Co.*, 246 F.3d 289, 299 (3d Cir. 2001); *Wall Street Aubrey Golf, LLC v. Aubrey*, 189 F. App'x 82 (3d Cir. 2006)). Notably, Dobco has not challenged either UCIA or Union County's reliance on Rule 12(b)(6). (*See generally* ECF No. 52.) Therefore, this Court will treat the UCIA and Union County's motions to dismiss pursuant to the forum selection clause as motions to dismiss pursuant to the doctrine of *forum non conveniens*. *See Woodell v. Coach*, Civ. A. No. 22-2222, 2022 WL 17486262, at *3 (D.N.J. Dec. 7, 2022).

I.    **BACKGROUND**

    A.    **Factual Background**

In August 2020, Union County authorized the construction of a new government complex (the "Union Project"), which was to be completed in two phases: planning and design ("Phase One"); and construction ("Phase Two"). (*See* ECF No. 1 ¶¶ 25, 60.) Union County subsequently designated the UCIA as the "redevelopment entity" responsible for selecting the general contractor for same. (ECF No. 1 ¶ 26.) The UCIA then issued a request for bids for both phases of the project. (*Id.* ¶¶ 28–30.) In response, Dobco submitted a bid with "numerous questions" regarding the UCIA's intent to award the contract to the lowest responsible bidder pursuant to the Local Redevelopment & Housing Law ("LRHL"), N.J. Stat. Ann. 40A:12A-1 *et seq.* (*Id.* ¶¶ 36–39.)

In February 2021, Dobco filed suit in the Superior Court of New Jersey, challenging the UCIA's authority to not award the contract to the lowest responsible bidder; and requesting the Superior Court to stay the UCIA from awarding same, which the Superior Court denied. (*See id.* ¶¶ 46, 48, 50, 55–56.) The UCIA subsequently awarded the contract to Terminal Construction Corp. and started Phase One of the Union Project. (*See id.* ¶¶ 57, 76, 83, 86.)

In July 2021, the Superior Court of New Jersey, Appellate Division issued a decision holding a county improvement authority is subject to the LRHL and required it to award the contract to the lowest responsible bidder.[2] (*Id.* ¶¶ 70, 72.) Based on this decision, in June 2022, the Superior Court entered an order staying Phase Two of the Union Project. (*Id.* ¶¶ 73–80, 95.)

In November 2023, the UCIA issued a new request for bids (the "Request for Bids") for Phase Two of the project. (*Id.* ¶ 104; *see also generally* ECF No. 46-5.) In response, Dobco

---

[2] *See generally Dobco, Inc. v. Bergen Cnty. Improvement Auth.*, 260 A.3d 55 (N.J. App. Div. 2021), *aff'd*, 273 A.3d 406 (N.J. 2022).

submitted a bid for same. (*See* ECF No. 1 ¶¶ 106–07.) In February 2024, the UCIA awarded the contract to Dobco (the "Contract"). (*Id.* ¶¶ 107–08.) Notably, the Contract incorporates in its entirety the terms of the Request for Bids, which is collectively referred to as the "Agreement." (ECF No. 46-6 ¶¶ 1.3, 1.17.) The Agreement includes a Dispute Resolution Clause (*Id.* ¶ 19.0), a Governing Law Clause (*id.* ¶ 23.8), and a Forum Selection Clause (*id.* ¶ 23.9).

The Dispute Resolution Clause provides all claims against the UCIA "shall" be governed by a two-step review, which is sequential in nature and "a mandatory prerequisite to the initiation of litigation." (*Id.* ¶ 19.4; *accord* ECF No. 1 ¶ 131.) First, Plaintiff is required to submit a claim with documentation for administrative review to both the UCIA and the construction manager, MAST. (ECF No. 46-6 ¶¶ 19.4, 19.6.) "The documentation provided to the [UCIA] will serve as the basis for evaluation of [Plaintiff]'s position regarding the Claim throughout Step One of the administrative process." (*Id.* ¶ 19.6.1.) In response, the UCIA may schedule a meeting to discuss the claim and shall render a decision in writing within thirty days of either its receipt of the claim with documentation or of the meeting to discuss the claim, "whichever is later." (*Id.* ¶ 19.6.2.) In response, Plaintiff is required to either accept or reject the decision in writing within fifteen days of its receipt of same. (*Id.* ¶ 19.6.2.) The failure to either accept or reject the decision in writing within the fifteen days will be considered a withdrawal of the claim from the administrative process. (*Id.* ¶ 19.6.2*; accord* ECF No. 1 ¶¶ 132–34.)

Second, if Plaintiff rejects the decision in writing within the fifteen days, then the Claim may be submitted to non-binding mediation either after final completion or prior to final completion as agreed to by the parties. (*See* ECF No. 46-6 ¶ 19.7; *see also id.* ¶ 1.29 (defining "final completion" as the issuance of either the certificate of occupancy or certificate of acceptance).) If the parties fail to agree to a date for or the terms of mediation, the mediation will

not proceed and "Step Two will be deemed complete." (*Id.* ¶ 19.7.) If the Claim is not resolved following Step Two, then Plaintiff shall file suit to resolve same in the Superior Court. (*Id.* ¶ 23.9; *accord* ECF No. 1 ¶ 131.)

The Governing Law Clause states, "any and all litigation arising therefrom or related thereto shall be governed by the applicable laws, regulations and rules of the State of New Jersey." (ECF No. 46-6 ¶ 23.8.) The Forum Selection Clause states, "[a]ny legal action to resolve a dispute or Claim filed under the terms of this Agreement shall be brought only in a state court in the State of New Jersey." (*Id.* ¶ 23.9.)

Following the parties' execution of the Contract, the UCIA provided Dobco with the drawings and specifications for the construction of the new government complex. (ECF No. 1 ¶¶ 119.) Although the drawings and specifications contain a "Not Issued for Construction" notation, the UCIA directed Dobco to utilize the drawings and specifications to complete Phase Two. (*Id.* ¶¶ 119–20.)

Between February 2024 and January 2025, Dobco claims "numerous" issues and conflicts arose.[3] (*See id.* ¶¶ 8(ii), 123, 130, 149.) In response, Dobco submitted claims with documentation for administrative review under Step One of the Dispute Resolution Clause. (*Id.* ¶¶ 135, 137.) The UCIA, however, purposefully delayed the resolution of these claims by routinely scheduling meetings to discuss the claims resulting in delays and costs relating to same. (*Id.* ¶¶ 135, 137.) Additionally, Dobco alleges Defendants have failed to provide a copy of the drawing and specifications with a "Issued for Construction" notation (*id.* ¶¶ 8(i), 121–22), compelled Dobco to complete an accelerated plan (*id.* ¶ 8(iii), 129(vi)), refused to accept furniture "equivalent" to the

---

[3] Although Dobco claims there are "numerous" instances and conflicts between the parties, Dobco only specifically identifies four issues in detail in the Complaint. (*See generally* ECF No. 1.)

furniture specified in the Agreement (*id.* ¶¶ 8(vii), 158–65), and refused to issue payment based on the reservation of rights language Dobco added to a change work order[4] (*id.* ¶¶ 8(iv), 150–57). Dobco does not claim he requested mediation under Step Two following receipt of the UCIA's decisions. (*See generally id.*)

### B.    Procedural History

On January 27, 2025, Dobco filed the Complaint alleging two causes of action against Defendants for constitutional violations under 42 U.S.C. § 1983—a First Amendment retaliation claim (the "retaliation claim") and a conspiracy claim (the "conspiracy claim") (collectively, the "constitution claims"). (*See generally id.*)

On March 7, 2025, MAST filed a motion to dismiss (ECF No. 21), which the Court terminated administratively for failure to request a pre-motion conference (ECF No. 24). Defendants filed letters requesting a pre-motion conference on March 11 and 12, 2025. (ECF No. 25; ECF No. 26; ECF No. 27; ECF No. 28.) On March 14, 2025, Dobco filed a letter requesting permission to file an omnibus response (ECF No. 30), which the Court granted on March 17, 2025 (ECF No. 31). Dobco filed the omnibus response on March 19, 2025. (ECF No. 32.)

On April 7, 2025, the Court conducted the pre-motion conference and ordered motions to dismiss to be filed by April 28, 2025. (ECF No. 33; *accord* ECF No. 34.) MAST filed a second motion to dismiss on April 9, 2025 (ECF No. 35; *see also* ECF No. 41 (joining the arguments raised in co-defendants' respective motions)); and Di Group, the UCIA, and Union County filed their respective motions to dismiss on April 28, 2025 (ECF Nos. 38, 39, 40).

---

[4] The Complaint also alleges Defendants "refus[ed] to provide or disclose critical information from Dobco" (ECF No. 1 ¶ 8(ii)), "disrupt[ed] relationships with numerous third parties necessary to complete the project" (*id.* ¶ 8(v)), and "spread[] false information about Dobco to third parties who are necessary to complete the project" (*id.* ¶ 8(vi)). The Complaint, however, fails to provide sufficient factual allegations in support of these claims. (*See generally id.*)

On May 13, 2025, Dobco filed a letter with the Court for an extension of time to respond to the motions to dismiss. (ECF No. 42.) In response, the Court terminated the motions to dismiss and ordered the parties to file their respective briefs, oppositions, and replies on each other by dates certain and to file or refile all papers on the docket by no later than June 18, 2025. (ECF No. 43.)

On June 12, 2025, MAST filed its third motion to dismiss and reply (ECF No. 44; ECF No. 45); on June 17, 2025, the UCIA and Di Group filed their motions to dismiss and replies respectively (ECF Nos. 46, 47, 48, 49); and on June 18, 2025, Union County filed its motion to dismiss and reply (ECF Nos. 50, 51), and Dobco filed its opposition[5] (ECF No. 52).

## II.   LEGAL STANDARD

### A.   Rule 12(b)(1)

"When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *Dickerson v. Bank of Am., N.A.*, Civ. A. No. 12-3922, 2013 WL 1163483, at *1 (D.N.J. Mar. 19, 2013) (quoting *In re Corestates Tr. Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993), *aff'd*, 39 F.3d 61 (3d Cir. 1994)). A motion to dismiss under Rule 12(b)(1) challenging the Court's subject matter jurisdiction asserts the Court lacks "authority or competence to hear and decide the case before it." *Northlight Harbor, LLC v. United States*, 561 F. Supp. 2d 517, 520 (D.N.J. 2008) (citing Charles Alan Wright & Arthur R. Miller, *5B Federal Practice and Procedure* § 1350 (3d ed. 2004)). It requires a plaintiff to bear the burden of pleading that jurisdiction is appropriate. *Id.* at 521; *see also Wright v. N.J./Dep't of*

---

[5] On April 10, 2025, Dobco requested permission to file an opposition in excess of the forty-page limit permitted under Local Civil Rule 7.2(b) (ECF No. 36), which the Court granted on April 11, 2025 (ECF No. 37).

*Educ.*, 115 F. Supp. 3d 490, 495 (D.N.J. 2015) ("It is well-settled that the plaintiff bears the burden of establishing subject matter jurisdiction ... to defeat a motion under 12(b)(1)."). In considering dismissal for lack of subject matter jurisdiction, a district court's focus is not on whether the factual allegations entitle a plaintiff to relief, but rather on whether the court has jurisdiction to hear the claim and grant relief. *See Maertin v. Armstrong World Indus., Inc.*, 241 F. Supp. 2d 434, 445 (D.N.J. 2002) (citing *New Hope Books, Inc. v. Farmer*, 82 F. Supp. 2d 321, 324 (D.N.J. 2000)). The court is tasked with determining "whether [it is] dealing with a facial or factual attack to jurisdiction." *United States ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007).

"A facial attack ... is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law, or because there is no indication of a diversity of citizenship among the parties, or because some other jurisdictional defect is present." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). The standard of review for a facial attack is the same as one "under Rule 12(b)(6), i.e., construing the alleged facts in favor of the nonmoving party." *Id.* (citing *In re Schering Plough Corp. Intron*, 678 F.3d 235, 243 (3d Cir. 2012)).

A factual attack, however, "concerns not an alleged pleading deficiency, but rather the actual failure of [a plaintiff's] claims to comport with ... jurisdictional prerequisites." *United States ex rel. FLFMC, LLC*, 855 F. Supp. 2d at 304 (quoting *United States ex rel. Atkinson*, 473 F.3d at 514). Unlike a facial attack, no presumption of truthfulness attaches to a plaintiff's allegations. *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016)).

The Third Circuit has "repeatedly cautioned against allowing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction to be turned into an attack on the merits." *Davis*, 824 F.3d at 348. "[D]ismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Id.* at 350 (alteration in original) (quoting *Kulick v. Pocono Downs Racing Ass'n, Inc.*, 816 F.2d 895, 899 (3d Cir. 1987)).

Here, Defendant asserts a facial 12(b)(1) challenge given it does not raise arguments concerning any of the underlying facts but rather focuses exclusively on deficiencies in the pleadings. *See Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

### B. *Forum Non Conveniens*

*Forum non conveniens* requires the Court to decide "whether a case 'should be adjudicated elsewhere,' and 'is the proper mechanism for enforcing a forum selection clause.'" *Meridian Consulting I Corp., Inc. v. Eurotec Can. Ltd.*, Civ A. No. 1922197, 2021 WL 689132, at *9 (D.N.J. Feb. 22, 2021) (internal citations omitted) (first quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007); and then quoting *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 180 (3d Cir. 2017)). "A district court therefore may dispose of an action by a *forum non conveniens* dismissal . . . when considerations of convenience, fairness, and judicial economy so warrant." *Sinochem Int'l Co.*, 549 U.S. at 432. When no forum selection clause is present, a district court must consider the following factors in applying the doctrine of *forum non conveniens*:

> (1) the amount of deference to be afforded to plaintiffs' choice of forum; (2) the availability of an adequate alternative forum where defendants are amenable to process and plaintiffs' claims are cognizable; (3) relevant 'private interest' factors affecting the convenience of the litigants; and (4) relevant 'public interest' factors affecting the convenience of the forum.

*Collins*, 874 F.3d at 186 (quoting *Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 873 (3d Cir. 2013)). However, when a forum selection clause exists, the analysis changes. *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 63 (2013). The plaintiff's choice of forum "merits no weight," *id.*, and the court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* at 64. "Therefore, under *Atlantic Marine*, the remaining factors for the Court to consider are (i) the availability of an adequate alternative forum where [the defendant] is amenable to process and [a] [p]laintiff's claims are cognizable, and (ii) public interest factors." *Hage v. Am. Bd. of Obstetrics & Gynecology*, Civ. A. No. 19-21198, 2020 WL 3056442, at *4 (D.N.J. June 9, 2020). "[T]he party resisting application of a forum selection clause . . . bears a heavy burden under *Atlantic Marine*" of establishing the forum selection clause should not be enforced. *Collins*, 874 F.3d at 186–87.

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine*, 571 U.S. at 60. "Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system." *Id.* But "[f]or the remaining set of cases calling for a nonfederal[, meaning state or foreign,] forum, § 1404(a) has no application, but the residual doctrine of *forum non conveniens* 'has continuing application in federal courts.'" *Id.* at 60–61 (quoting *Sinochem Int'l Co.*, 549 U.S. at 430).

### C.    Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancement" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the court may not consider any "[f]actual

11

claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after Iqbal, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible, allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 570). The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, generally, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (emphasis added) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

### D.    Motion to Stay

District courts have broad authority to stay proceedings. *Bechtel Corp. v. Local 215 Laborers' Union of N. Am., AFL-CIO*, 544 F.2d 1207, 1215 (3d Cir. 1976). The authority to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with the economy of time and effort for [the court], for counsel, and for litigants." *Id.* (quoting *Landis v. N. Am. Co.*, 299 U.S. 245, 254–55 (1936)). The question of how best to balance the docket "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* Further, the party seeking the stay has the burden to show that a stay is appropriate. *Landis*, 299 U.S. at 254. The party seeking the stay must also show "a clear case of hardship or inequity, if there is even a fair possibility that the stay would work damage on another party." *Id.* at 254–55.

Generally, when considering whether a stay is appropriate courts will weigh a number of factors: if inequity will result if the stay is not granted; if the non-moving party will be harmed or prejudiced; and judicial efficiency—which includes evaluating whether a stay will simplify the issues and whether the case is in the early stages of litigation. *Tigercat Int'l, Inc. v. Caterpillar Inc.*, Civ. A. No. 16-1047, 2018 WL 2049816, at *2 (D. Del. May 2, 2018); *see also Iowa Network Servs., Inc. v. AT&T Corp.*, Civ. A. No. 14-3439, 2019 WL 4861348, at *6 (D.N.J. Oct. 2, 2019) (dividing the factors into four elements).

"A stay is particularly appropriate and within the court's 'sound discretion' where the outcome of another case may 'substantially affect' or 'be dispositive of the issues' in a case pending before the district court." *MEI, Inc. v. JCM Am. Corp.*, Civ. A. No. 09-351, 2009 WL

3335866, at * 4 (D.N.J. Oct. 15, 2009) (citing *Bechtel Corp.*, 544 F.2d at 1215). The aforementioned practice is particularly true when the other proceeding is in another federal court. *Id.; see also Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976) (asserting when there is concurrent jurisdiction between federal district courts "the general principle is to avoid duplicative litigation").

## III. DECISION

Defendants collectively move to dismiss Dobco's Complaint for lack of subject matter jurisdiction under Rule 12(b)(1); and for failure to state a claim under Rule 12(b)(6). (*See generally* ECF Nos. 44, 46, 48, 50.) Specifically, Defendants argue the Complaint should be dismissed because: it fails to sufficiently plead "concrete" damages (*see* ECF No. 46 at 23–24; ECF No. 48 at 8–9; ECF No. 50 at 18–20); the Forum Selection Clause requires this dispute be litigated in the Superior Court of New Jersey (*see* ECF No. 46 at 24–25; ECF No. 17–18); the Dispute Resolution Clause requires a two-step review of a dispute as a prerequisite of litigation (*see* ECF No. 46 at 21–23; ECF No. 50 at 13–17); the Complaint fails to sufficiently plead a retaliation claim (*see* ECF No. 44 at 3–9; ECF No. 46 at 8–20; ECF No. 48 at 2–7; ECF No. 50 at 20–29); the Complaint fails to sufficient plead a conspiracy claim (*see* ECF No. 44 at 10–12; ECF No. 46 at 20–21; ECF No. 48 at 2–5, 7–8; ECF No. 50 at 20–21, 29–30); and the Complaint fails to plead a breach of contract claim as required to establish a constitutional violation under 42 U.S.C. § 1983 (*see* ECF No. 44 at 12–13). Alternatively, Union County requests the Court to stay the action pending mediation under the Dispute Resolution Clause.[6] (ECF No. 50 at 13–17.)

---

[6] Alternatively, Di Group requests an extension of time to answer. (ECF No. 48 at 9.) Pursuant to Local Civil Rule 12.2, if a motion to dismiss addresses less than all the claims in the complaint, an answer in response to the remaining claims "shall be filed 14 days after the entry of the Court's order."

In response, Dobco argues neither the Forum Selection Clause nor the Dispute Resolution Clause apply because: the Complaint sufficiently pleads "concrete" damages (ECF No. 52 at 6–10); the causes of action are "outside" the scope of the Agreement (*id.* at 10–17); and the Complaint sufficiently pleads both a retaliation claim and a conspiracy claim (*id.* at 17–53). Alternatively, if the Court grants Defendants' motions and dismisses the Complaint, Dobco requests the Court to dismiss the Complaint without prejudice to allow Dobco an opportunity to amend same. (*Id.* at 54.)

"When a motion under Rule 12 is based on more than one ground, the [C]ourt should consider the 12(b)(1) challenge first, because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *Gov't Employees Ins. Co. v. Elkholy*, Civ. A. No. 21-16255, 2022 WL 2373917, at *3 (D.N.J. June 3, 2022) (citing *Dickerson v. Bank of Am., N.A.*, 2013 Civ. A. No. 12-3922, WL 1163483, at *1 (D.N.J. Mar. 19, 2013)).

## A.    Rule 12(b)(1)

Defendants move to dismiss Dobco's Complaint for lack of subject matter jurisdiction as Dobco fails to allege a "concrete" injury. (*See generally* ECF No. 46 at 23–24; ECF No. 48 at 8–9; ECF No. 50 at 18–20.) In response, Dobco argues he has suffered a monetary injury as a result of Defendants' conspiracy to retaliate. (*See* ECF No. 52 at 6–10.)

Article III limits the jurisdiction of the federal courts to "cases" and "controversies." *See* U.S. CONST. Art. III, § 2. "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting *Raines v. Byrd*, 521 U.S. 811, 819 (1997)). To establish standing, a plaintiff is required to demonstrate the following elements: (a) "an injury-in-fact"; (b) "a sufficient casual connection between the injury and the conduct complained of"; and (c) "a likelihood that

the injury will be redressed by a favorable decision." *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016). A plaintiff bears the burden of demonstrating each of these elements by sufficient factual allegations. *TransUnion*, 594 U.S. at 430–31 (citing *Lujan v. Def. of Wildlife*, 504 U.S. 555, 561 (1992)).

To demonstrate an injury-in-fact, a plaintiff is required to show "he or she suffered an invasion or a legally protected interest," which is both "concrete and polarized" and "actual or imminent." *Ellison v. Am. Bd. of Orthopaedic Surgery*, 11 F.4th 200, 205 (3d Cir. 2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)). A "concrete" injury is an injury which is not conjectural, hypothetical, or abstract. *See Lujan*, 504 U.S. at 560 n.1; *Ellison*, 11 F.4th at 205. Whether an alleged injury is "concrete" will turn on whether the "injury has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Foley v. Medicredit, Inc.*, Civ. A. No. 21-19764, 2022 WL 3020129, at *2 (D.N.J. July 29, 2022) (quoting *TransUnion*, 594 U.S. at 414). Therefore, a plaintiff may demonstrate a "concrete" injury by asserting sufficient factual allegations indicating he or she has suffered a "physical injury," "monetary injury," or a recognized "intangible injury," such as "reputational harms, disclosure of private information, and intrusion upon seclusion." *TransUnion*, 594 U.S. at 425.

The Court finds the Complaint asserts sufficient factual allegations to demonstrate standing under Article III. Specifically, the Complaint alleges the following: Dobco has suffered a "concrete" injury—monetary damages—as a result of Defendants' conspiracy to retaliate (*see, e.g.*, ECF No. 1 ¶ 173 (claiming Dobco has suffered delay costs as a result of Defendants' "interference with and refusal to cooperate with Dobco during its performance of work on the Union Project")), which is likely to be redressed by a favorable decision of nominal damages, *see Uzuegbunam v. Preczewski*, 592 U.S. 279, 285–86 (2021). Therefore, the Court finds dismissal for

16

a lack of subject matter jurisdiction is not appropriate as the causes of action allege a "concrete" injury and, as such, are not so "completely devoid of merit as not to involve a federal controversy." *Davis*, 824 F.3d at 348–49.

Based on the foregoing, Defendants' respective Motions to Dismiss under Rule 12(b)(1) are **DENIED**.

### B.    *Forum Non Conveniens*

UCIA and Union County move to dismiss the Complaint pursuant to the Forum Selection Clause.[7] (ECF No. 46 at 24–25; ECF No. 50 at 17–18.) In response, Dobco claims the Forum Selection Clause does not apply as the causes of action are "outside" the scope of the Agreement. (*See* ECF No. 52 at 10–14.)

To determine whether a cause of action is subject to a forum selection clause, the Court must make three findings: (1) whether a valid and enforceable forum selection clause exists; (2) whether the alleged causes of action fall within the scope of the clause; and (3) whether public interest factors override enforcement of the forum selection clause. *See Radiology Cntr. At Harding, Inc. v. Hitachi Healthcare Ams.*, Civ. A. No. 23-1516, 2024 WL 139486, *2 (D.N.J. Jan. 12, 2024). If the Court determines the cause of action is subject to the forum selection clause and

---

[7] Union County also moves to dismiss the Complaint pursuant to the Forum Selection Clause. (ECF No. 50 at 17-18.) The record establishes, however, Union County was not a signatory to the Agreement. (*See generally* ECF No. 46-6.) A non-signatory may only enforce a forum selection clause if the non-signatory is an intended third-party beneficiary of the agreement or if it is a closely related party to a signatory. *See In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 59 (3d Cir. 2018). "In determining whether a non-signatory is closely related to a contract, courts consider the non-signatory's ownership of the signatory, its involvement in the negotiations, the relationship between the two parties and whether the non-signatory received a direct benefit from the agreement." *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 219 (3d Cir. 2015). Notably, Dobco failed to address whether Union County had the authority to enforce the Forum Selectin Clause in its Opposition and, as such, has waived its opposition to same. *See Woodell*, 2022 WL 17486262, *3.

the selected form is a state court, the appropriate remedy is either remand or dismissal. *Nitterhouse Concrete Prods, Inc. v. Dobco, Inc.*, 305 F. Supp. 3d 580, 585 (D.N.J. 2018).

Here, Dobco argues the scope of the Forum Selection Clause should be interpreted narrowly as the clause utilizes the term "filed under" rather than the broader terms of "arising out of" or "relating to."[8] (ECF No. 52 at 13–14.) Dobco limits its opposition to the argument the causes of action do not fall within the scope of the Forum Selection Clause and does not argue either the Forum Selection Clause is invalid or that public interest factors override enforcement of same. (*See id.* at 10–14.)

### 1.     New Jersey Law Applies

The scope of a forum selection clause is a question of contract interpretation. *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 58 (3d Cir. 2018) (quoting *John Wyeth & Brother Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1073 (3d Cir. 1997)). Although federal law controls the enforcement of a forum selection clause, state law controls the interpretation of same. *Id.* at 62–63.

Pursuant to the Governing Law Clause, "[t]his Agreement, and any and all litigation arising therefrom or related thereto shall be governed by the applicable laws, regulations and rules of the State of New Jersey without reference to conflict-of-laws principles." (ECF No. 46-6 ¶ 23.8.)

---

[8] Dobco attempts to distinguish the circumstances in this action from those in a prior action— *Dobco, Inc. v. County. of Bergen*, Civ. A. No. 22-0090, 2022 WL 4366271 (D.N.J. Sept. 21, 2022)—wherein this Court dismissed its retaliation claim as the claim "related to" the parties' agreement. *See id.*, at *4 (holding the term "related to" is broader than "arising under"). Although the Court recognizes the term "related to" is interpreted more broadly than the term "arising under," the Court notes the term "arising under" is still interpreted broadly. *See Zhuang v. EMD Performance Materials Corp.*, Civ. A. No. 23-2715, 2024 WL 937240, at *2 (3d Cir. Mar. 5, 2024).

Therefore, the scope of the Forum Selection Clause is to be interpreted pursuant to New Jersey law, which no party contests. (*See generally* ECF No. 52.)

In New Jersey, the primary concern in contract interpretation is "discerning the intent of the parties." *Kernahan v. Home Warranty Administrator of Florida, Inc.*, 199 A.3d 766, 777 (N.J. 2019); *accord Jacobs v. Great Pacific Century Corp.*, 518 A.2d 223, 227 (N.J. 1986)). To discern the intent of the parties the Court may consider "the particular contractual provision, an overview of all the terms, the circumstances leading up to the formation of the contract, custom, usage, and the interpretation placed on the disputed provision by the parties' conduct." *Jacobs*, 518 A.2d at 227; *accord Palmer v. Flagship Resort Dev. Corp.*, 335 A.3d 641, 650 (N.J. Super. Ct. App. Div. 2025); *see also Focazio v. Aboyoun*, 332 A.3d 1148, 1155 (N.J. Super. Ct. App. Div. 2025) (holding a contract "must be read as a whole, in accord with justice and common sense" (internal quotation marks omitted)); *Boyle v. Huff*, 314 A.3d 793, 798 (2024) (holding a contract must be read "as a whole in a fair and common sense manner"). In reviewing the terms of the contract, the terms should be reviewed pursuant to their plain and ordinary meanings within the context of "the contractual scheme as a whole." *See Boyle*, 314 A.3d at 799; *Kernahan*, 199 A.3d at 778. The Court's task, however, is simply interpretative and it may not rewrite the contract "better than or different from the one the[] [parties] wrote for themselves." *Boyle*, 314 A.3d at 799 (quoting *Kieffer*, 14 A.3d 737).

### 2.    The Scope of the Forum Selection Clause

The Forum Selection Clause states "[a]ny legal action to resolve a dispute or Claim filed under the terms of this Agreement shall be brought only in a state court in the State of New Jersey." (ECF No. 46-6 ¶ 23.9.) To discern the intent of the parties, the Court considers the contractual

provisions pursuant to their plain and ordinary meanings within the context of the Agreement as a whole. *Boyle*, 314 A.3d at 799.

First, the term "Agreement" is defined as the Contract and "all documents specifically incorporated herein[] between the Authority and [Dobco]." (ECF No. 46-6 ¶ 1.3.) As the Agreement specifically incorporates in its entirety the Request for Bids, the "terms of the Agreement" include, but are not limited to, the terms included in both the Contract and the Request for Bids. (*See also id.* ¶ 1.17 (specifically incorporating Dobco's "bid submission in response to the Request for Bids").)

Second, the term "dispute" is not defined within the Agreement. (*See generally id.*) The Superior Court of New Jersey, Appellate Division, however, has defined the term broadly to include any conflict or controversy "under all circumstances." *Najmee v. Brownstones at Essex Fells, LLC*, No. A-3232-12T3, 2014 WL 349486, at *2 (N.J. Super. Ct. App. Div. Feb. 3, 2014) (citing Webster's II New College Dictionary 335 (1995); Black's Law Dictionary 505 (8th ed. 2004)); *accord Green v. LVNV Funding, LLC*, Civ. A. No. 24-396, 2024 WL 1173097, at *3 (D.N.J. Mar. 19, 2024)); *see also Delaney v. Dickey*, 242 A.3d 257, 276 (2020) (noting, in an ordinary commercial contract, the term "any dispute" is to be defined broadly).

In contrast, the term "Claim" is defined as a demand by Dobco for either: "a time extension[,] which is disputed by the Authority"; or "the payment of money or damages, arising from Work performed by or on behalf of [Dobco] in connected with the Contract Documents, which is disputed by the Authority." (ECF No. 46-6 ¶ 1.10.) The Dispute Resolution Clause, however, requires "[a]ll *Claims* by the Contractor against the Authority" to be reviewed pursuant to two-step administrative process prior to litigation. (*Id.* ¶ 19.4.) Notably, the Agreement also requires the following disagreements between the Contractor and the Authority to be reviewed

pursuant to the two-step administrative process: "whether the Contractor is entitled to an adjustment to the Contract Price for any Work required by the Authority, or if there are any other disagreements over the scope of Work or proposed changes to the scope of Work." (*Id.* ¶ 8.2.3.) Therefore, interpreted within the context of the Agreement as a whole, the terms "Claim" and "dispute" are defined broadly to include any disagreement between Dobco and the "Authority" relating to: (1) the scope of work; (2) the contract cost; or (3) damages arising from the work performed.

Third, the term "Authority" is defined within the Contract simply as the UCIA (*see id.* ¶ 1.5), but is defined within the Request for Bids as the UCIA "or the Authorized Representative of the [UCIA]" (ECF No. 46-5 at 5, § II (DEFINITIONS) (defining "Authority")), meaning "any member, committee, officer, or representative of the [UCIA] duly authorized to execute the Contract on behalf of the [UCIA]" (*id.* (defining "Authorized Representative of the Authority")). Although the two definitions of the term differ, the two definitions do not conflict and, as such, the term "Authority" is defined broadly to include any and all members and/or authorized representatives of the UCIA. Notably, the Agreement identifies the "Construction Manager" as an authorized representative but does not identify the "Architect" as same. (*Compare* ECF No. 46-6 ¶ 1.14 (defining the term to mean "the person, persons or firm engaged by the Authority to act as the [UCIA]'s representative on the Project"), *with id.* ¶ 1.7 (defining the term to mean "the firm, including subconsultants, engaged by the Authority to provide architectural and other services")).

Accordingly, the scope of the Forum Selection Clause includes any cause of action filed by Dobco against the UCIA and/or MAST, including their respective members, to resolve a disagreement, including but not limited to: (1) the scope of work; (2) the contract cost; or (3)

damages arising from the work performed. The scope of the clause, however, does not include a cause of action filed by Dobco against either Union County or Di Group.

### 3.     Enforcement of a Forum Selection Clause Against Non-Signatories

Where a plaintiff alleges the same causes of action against multiple defendants, only some of whom have agreed to litigate a cause of action in a specific forum, "the Third Circuit has established a four-step analytical framework to determine if the [C]ourt should retain all claims, transfer all claims, or sever and transfer only the claims subject to the forum selection clause." *Fin. Res. Fed. Credit Union v. Alloya Corp. Fed. Credit Union*, Civ. A. No. 20-6180, 2021 WL 268176, at *3 (D.N.J. Jan. 27, 2021) (citing *In re McGraw-Hill*, 909 F.3d at 69–70; *In re: Howmedica Osteonics Corp.*, 867 F.3d 390 (3d Cir. 2017)). First, the Court assumes the forum selection clause applies to the signatory parties and "claims concerning those parties should be litigated in the fora designated by the clause[]." *Howmedica*, 867 F.3d at 404 (quoting *Atlantic Marine*, 571 U.S. at 66).

Second, the Court must weigh the "private and public interests relevant to non-[signatory] parties." *Id.*; *see also Peck v. Jayco, Inc.*, 665 F. Supp. 3d 607, 614 (D.N.J. 2023) (identifying public interest factors). "If the First and Second steps point to the same forum, 'then the [C]ourt should allow the case to proceed in that forum.'" *Fin. Res. Fed. Credit Union*, 2021 WL 268176, at *3 (quoting *Howmedica*, 867 F.3d at 404). If, however, the First and Second steps point to different forums, then the Court should proceed to Step Three—"threshold issues related to severance"—and Step Four—"which transfer decision most promotes efficiency while minimizing prejudice to non-contracting parties' private interests." *Peck*, 665 F. Supp. 3d at 612 (quoting *Howmedica*, 867 F.3d at 403–04)). This four-step analysis, however, only applies if the non-

signatory parties seek to litigate the matter in "a *different* forum than the one designated in th[e] [forum selection] clause." *Woodell*, 2022 WL 17486262, *3–4.

Here, Dobco alleges the same causes of action of retaliation and conspiracy against all Defendants. (*See generally* ECF No. 1.) In response, both the UCIA Defendants and Union County Defendants move to dismiss the Complaint based on the Forum Selection Clause. (*See* ECF No. 46 at 24–25; ECF No. 50 at 17–18.) In response, neither MAST Defendants nor Di Group Defendants have opposed or addressed the issue of whether the Complaint should be dismissed under the Forum Selection Clause. (*See generally* ECF Nos. 44, 45, 48, 49.) Therefore, the non-signatory parties have waived their respective oppositions to same. *See Woodell*, 2022 WL 17486262, *3.

Accordingly, if the Court determines the causes of action against either the UCIA Defendants or MAST Defendants fall within the scope of the Forum Selection Clause, then the Court is required to dismiss the Complaint without prejudice to allow the action to proceed in the Superior Court of New Jersey against all Defendants. *See Fin. Res. Fed. Credit Union*, 2021 WL 268176, at *3.

### 4.    Dobco's Causes of Action

In determining whether the alleged causes of action fall within the scope of the clause, however, "the focus is on the facts underlying the claims, and not the actual legal terms in which each claim is couched." *Nitterhouse Concrete Prods.*, 305 F. Supp. 3d at 585 (citing *Caruso v. Ravenswood Developers*, 767 A.2d 979, 984 (N.J. Super. Ct. App. Div. 2001)); *see also Bleumer v. Parkway Ins. Co.*, 649 A.2d 913, 927 (N.J. Super. Ct. App. Div. 1994) (holding whether a particular claim falls within the scope of a clause does not "upon the characterization of the claim, but upon the relationship of the claim to the subject matter of the . . . clause" (internal quotation

marks omitted)). Otherwise, a party to an agreement could frustrate the terms of same "simply by the manner in which it framed its claims." *Nitterhouse Concrete Prods.*, 305 F. Supp. 3d at 585.

Here, the Complaint alleges two causes of action—the retribution claim (ECF No. 1 ¶¶ 166–73) and the civil conspiracy (*id.* ¶¶ 174–81). Both claims are based on Defendants' alleged conspiracy to interfere and/or refuse to cooperate with Dobco in retaliation for its prior suit challenging the UCIA's authority. (*Id.* ¶¶ 111–118; ECF No. 52 at 31.) Although Dobco claims "[n]umerous issues and conflicts have arisen" (ECF No. 1 ¶ 123), Dobco specifically identifies only a handful of disputes between the parties (*see generally id.*). Primarily, Dobco claims Defendants "protract[ed] and delay[ed] the resolution of all disputes" (*id.* ¶ 8(ii)), under the Agreement's two-step dispute review process by

> consistently request[ing] meetings and schedul[ing] them late after receipt of Dobco's claim . . . . intentionally delaying the claim process as [they] could avoid making any decision with respect to the claim during the initial thirty (30) day period and, by holding the meeting late, avail [themselves] to an additional thirty (30) days to render [their] decision.

(*Id.* ¶¶ 135, 137). Dobco also claims Defendants: (a) "fail[ed] and refus[ed] to provide Dobco 'issued for construction' project drawings" (*id.* ¶ 8(i); *see also id.* ¶¶ 119–22); (b) "compel[ed] Dobco to complete unnecessary tasks at great expense" (*id.* ¶ 8(iii); *see also id.* ¶ 129(vi) (requesting Dobco to prepare an accelerated plan "but later denying that it made such request")); (c) "with[eld] payment that is undisputably due and owing" (*id.* ¶ 8(iv); *see also id.* ¶¶ 150–57); and (d) "refus[ed] to administer the contract in the same manner it administers other contracts" (*id.* ¶ 8(vii); *see also id.* ¶¶ 158–65 (refusing to accept "equivalent" furniture)).

Although framed as causes of action "outside" the scope of the Agreement, the facts underlying both the retaliation and conspiracy claims clearly fall under the terms of the Agreement. First, "the [primary] act alleged by Dobco to constitute retaliation is a process specifically spelled

out in the parties' contract," *Dobco*, 2022 WL 4366271, at *4, which Dobco specifically identifies in support of its allegations (*see* ECF No. 1 ¶ 131–34 (reviewing the two-step dispute review process)). Stated another way, "Dobco's non-contractual claim here (retaliation) 'has its factual basis in the contractual business relationship between the parties' because Dobco essentially alleges that the [UCIA] is using the contractual dispute process in a retaliatory way." *Dobco*, 2022 WL 4366271, at *4.

Similarly, the other claims of allegedly retaliatory conduct also relate to terms or processes specifically spelt out in the Agreement. For example, the Agreement authorizes the UCIA to direct Dobco to perform work (*compare* ECF No. 46-6 ¶ 8.13, *and* ECF No. 1 ¶ 120 (directing Dobco to utilize the "Not Issued for Construction" drawing and specifications), *with id.* No. 1 ¶ 8(i), 119–22 (claiming Defendants failed to provide the "issued for construction" project drawings)), to accept or reject proposed "equivalent" substitutions (*compare* ECF No. 46-6 ¶ 5.9, *with* ECF No. 1 ¶¶ 8(vii), 158–65 (claiming Defendants failed to accept "equivalent" substitutions)), and to withhold payment (*compare* ECF No. 46-6 ¶ 9.5, *with* ECF No. 1 ¶¶ 8(iv), 150–57 (claiming Defendants withheld payment)); and authorizes Dobco to submit change orders to adjust the contract price to reflect changes in the scope of work (*compare* ECF No. 46-6 ¶¶ 8.1.1 to 8.1.3, *with* ECF No. 1 ¶¶ 8(iii), 129(vi) (claiming Dobco prepared an accelerated plan at great expense)).

Second, to establish a retaliation cause of action, a plaintiff is required to demonstrate the defendant's actions were "meritless, unsubstantiated, or frivolous." *Dobco*, 2022 WL 4366271, at *4 n.6; (*see also* ECF No. 1 ¶ 129 (describing Defendants' actions as baseless and meritless).) Dobco cannot demonstrate Defendants' actions were "meritless," however, without first

establishing Defendants breached either the terms or the spirit and purpose of the Agreement.[9] *See Wark v. J5 Consulting*, Civ. A. No. 23-266, 2025 WL 755695, at *2 (D.N.J. Mar. 10, 2025) (noting a breach of contract claim arises wherein a party acts inconsistent with the terms of a contract, whereas a breach of covenant of good faith and fair dealing claim arises wherein a party acts consistent with the terms of a contract but inconsistent with the spirt and purpose of same by "destroying or injuring the right of the other party to receive the fruits of the contract"). Therefore, the merits of the UCIA's actions under the Agreement—"whether it was in fact 'meritless' as Dobco claims—bear upon the viability of Dobco's retaliation action to some degree, linking the two once again." *Dobco*, 2022 WL 4366271, at *4.

Accordingly, the causes of action for retaliation and conspiracy are "inexplicably intertwined" with the terms of the Agreement and, therefore, fall within the scope of the Forum Selection Clause. *Dobco*, 2022 WL 4366271, at *4 (internal quotation marks omitted). Therefore, the Court finds Dobco was required to file its lawsuit against the UCIA, including its authorized representatives, in the Superior Court of New Jersey. (*See* ECF No. 46-6 ¶¶ 1.10, 8.2.3, 19.4, 23.9.)

Based on the foregoing, UCIA Defendants and MAST Defendants' Motions to Dismiss pursuant to the doctrine of *forum non conveniens* are **GRANTED** and the Complaint is **DISMISSED WITHOUT PREJUDICE** to be refiled in the Superior Court of New Jersey consistent with this Opinion. Having determined dismissal is appropriate under the doctrine of

---

[9] Notably, Dobco has failed to allege either a breach of contract claim or a breach of an implied covenant of good faith and fair dealing claim. *See Wark v. J5 Consulting*, Civ. A. No. 23-266, 2025 WL 755695, at *2 (D.N.J. Mar. 10, 2025) (noting a breach of contract claim arises wherein a party acts inconsistent with the terms of a contract, whereas a breach of covenant claim arises wherein a party acts consistent with the terms of a contract but inconsistent with the spirt and purpose of same by "destroying or injuring the right of the other party to receive the fruits of the contract"). As Dobco has failed to allege either cause of action, Defendants allegedly retaliatory acts, if any, were presumably within the terms and the spirit of the Agreement. *See Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 885 (3d Cir. 1997).

*forum non conveniens*, the Court need not consider whether the causes of action were barred under the Dispute Resolution Clause; whether the Complaint sufficiently pleaded a retaliation claim; or whether the Complaint sufficiently pleaded a conspiracy claim. Furthermore, Union County Defendants' request to stay the action pending mediation is moot.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' respective Motions to Dismiss pursuant to Rule 12(b)(1) are **DENIED**; UCIA Defendants and Union County Defendants' respective Motions to Dismiss pursuant to the doctrine of *forum non conveniens* are **GRANTED**; Defendants' respective Motions to Dismiss pursuant to 12(b)(6) are **DENIED AS MOOT**; Union County Defendants' Motion to Stay the Action is **DENIED AS MOOT**; and Dobco's Complaint is **DISMISSED WITHOUT PREJUDICE** to be refiled in the Superior Court of New Jersey consistent with this Opinion. An appropriate order follows.

**Date: November 10, 2025**                    */s/ Brian R. Martinotti*
                                    **HON. BRIAN R. MARTINOTTI**
                                    **UNITED STATES DISTRICT JUDGE**